**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **KATHI S. MYERS** | § | **CIVIL ACTION NO:** |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THOR MOTOR COACH, INC.** | § | |
| | § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.    Parties

1.    Plaintiff, KATHI S. MYERS, is an individual that now and has been at all times a citizen of the state of Ohio.

2.    Defendant, THOR MOTOR COACH, INC., hereinafter "TMC,"is an Indiana corporation authorized to do and doing business in the state of Ohio with its principal place of business located in the state of Indiana and is a citizen of the state of Indiana and is a warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind  involved in this case.

TMC's agent for service of process is C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

### II.    Jurisdiction

3.    This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

5.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV.   Conditions Precedent

6.      All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

7.      On September 8, 2021, Plaintiff purchased a new 2022 THOR SCOPE bearing VIN: 3C6LRVBG1ME515166, hereinafter "SCOPE," from GENERAL RV CENTER.

The SCOPE was purchased primarily for Plaintiff'S personal use.  The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

8.      The sales price of the SCOPE was $102,044.77, excluding finance charges.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.  See ***Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

**B.    Implied Warranties**

9.    As a result of the sale of the SCOPE by Defendant to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the SCOPE would pass without objection in the trade under the contract description; and that the SCOPE was fit for the ordinary purpose for which such SCOPE are purchased.

10.    Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant.  Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

**C.    Express Warranties**

11.    In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the SCOPE occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the SCOPE had, in fact, repaired the defects.

12.    Plaintiff' purchase of the SCOPE was  accompanied by express warranties offered by the Defendant, SCOPE, and extending to Plaintiff.  These warranties were part of the basis of the bargain of Plaintiff' contract for purchase of the SCOPE.

13.    The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the SCOPE's warranty booklet and owners manual.

**D.   Actionable Conduct**

14.   In fact, when delivered, the SCOPE was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiff' own words:

**"HI DAVE, DECIDED TO UPDATE THIS TO NOW INCLUDE THE LAST COUPLE OF MONTHS IN THE EVENT YOU WANT TO SHARE WITH THE INDIANA ATTORNEY.  IN MY PRIOR VERSION TO YOU, I WAS COUNTING THE OUT-OF-SERVICE DAYS AS THOSE ACTUALLY WITH A SERVICE PERSON, BUT THE REALITY IS THAT ALL THOSE DAYS IN BETWEEN WAS ME WAITING TO TAKE IT TO A SERVICE CENTER AND NOT FEELING SAFE TAKING IT ANYWHERE (ESPECIALLY WHEN I HAD THE UNKNOWN PARASITIC DRAW HAPPENING ON THE CHASSIS BATTERY).  AND EVEN TODAY I'M LEFT WITH FEAR ABOUT TAKING IT OUT DUE TO THE INEXPLICABLE 'ELECTRICAL SURGE' THAT MADE MY GENERATOR TRIP IN INDIANA, AND NOW POTENTIALLY A COOKTOP SAFETY ISSUE (SEE BELOW).  EVEN WITH ALL OF THIS, I FEEL LIKE I'M STILL MISSING SOMETHING.....**

**AUGUST 28TH - I PLACED A $5,000 DEPOSIT ON A VAN THAT HAD REPORTEDLY JUST COME OFF THE FACTORY LINE; GENERAL RV PLANNED FOR A DRIVER TO DELIVER IT STRAIGHT FROM FACTORY**

**SEPTEMBER 8TH -  VAN WAS DELIVERED TO NORTH CANTON GENERAL RV AND I DID WALKTHROUGH AND TEST DRIVE ON THIS DATE; THE WATER TANK HAD BEEN FILLED PRIOR TO MY ARRIVAL, BUT I DON'T KNOW WHEN EXACTLY; THE ESC SERVICE LIGHT CAME ON DURING TEST DRIVE SO I DID NOT COMPLETE PURCHASE; GENERAL RV AGREED TO TAKE TO SERVICE CENTER.  ON THIS DATE, I HAD ALSO NOTED ISSUES WITH THE TABLE APPEARING TO BE USED AND NOT WORKING PROPERLY, AND THE BUG**

SCREEN DIDN'T FIT.

SEPTEMBER 10TH  - GENERAL RV TOOK TO RAM DEALERSHIP (PROGRESSIVE CHRYSLER) TO FIX ESC LIGHT AND SEAT WIRING ISSUES THAT WERE DISCOVERED (NOT COVERED BY RAM WARRANTY SINCE IT WAS A THOR CONVERSION ERROR).

SEPTEMBER 11TH - I WENT BACK TO GENERAL RV TO COMPLETE THE VAN PURCHASE; WHEN I WENT TO THE VAN TO TAKE DELIVERY, DISCOVERED THE BATHROOM MIRROR GLASS WAS SEVERELY CRACKED (HAPPENED DURING ITS TIME WITH GENERAL RV AS IT WAS NOT LIKE THIS DURING MY 9/8 WALKTHROUGH), SO I COULD NOT TAKE PHYSICAL DELIVERY; LEFT IT WITH GENERAL RV TO FIX MIRROR.

SEPTEMBER 16TH (THURSDAY) - I WENT BACK TO GENERAL RV TO PICK UP VAN; FIRST DAY I HAD PHYSICAL POSSESSION OF IT OFF THE GENERAL RV LOT.  OVER THE NEXT SEVERAL DAYS, I NOTICED MY EYES WATERING AND SOME SINUS ISSUES THAT WERE OUT OF ORDINARY FOR ME – STARTED TO SERIOUSLY CONSIDER GETTING A MOLD ASSESSMENT FOR MY HOME.

SEPTEMBER 20TH (MONDAY) - DROVE VAN BACK AS SOON AS I WAS ABLE TO GET IN TOUCH WITH GENERAL RV UPON FINDING STREAMS OF WATER COMING OUT FROM UNDER THE SOFA/BENCH; ONCE AT SERVICE CENTER I LEARNED THE ORANGE SEAM ON THE BOTTOM OF THE SOFA/ BENCH I HAD NOTICED ON SEPTEMBER 8 (DURING WALKTHROUGH) WAS NOT A FACTORY SEALANT OF SOME SORT, BUT GROWING MOLD.  MAJOR WATER TANK DEFECT WAS DISCOVERED, WHICH HAD ALSO CAUSED ROT-DAMAGE IN THE MAJORITY OF THE FLOORING, COUCH, AND KITCHEN STILES. THIS WAS FIRST DAY I STARTED ASKING FOR MY MONEY BACK GIVEN THE EXTENT AND TYPE OF DAMAGE INCURRED BEFORE I EVEN TOOK DELIVERY OF VEHICLE.  GENERAL RV WAS TASKED WITH MAKING THE REPAIRS BY THOR (NOT TAKEN BACK TO FACTORY).  I HAD TO GET A RENTAL

CAR TO GET BACK HOME, GET A HOTEL ROOM FOR ONE NIGHT, AND HAVE A FAMILY MEMBER HELP ME RETURN THE RENTAL CAR SO AS TO NOT INCUR 25 DAYS OF CAR RENTAL.   HAD TO FULLY CANCEL A NON-REFUNDABLE $4,000 TRIP TO MONTANA SCHEDULED FOR 9/20 - 10/20 DUE TO NO VEHICLE AND ALL ADDITIONAL FUNDS BEING WRAPPED UP IN THE NEWLY PURCHASED VAN.

OCTOBER 20TH - I GOT A RIDE BACK TO GENERAL RV TO PICK UP VAN AND DID WALKTHROUGH WITH SERVICE CENTER.   THEY HAD FOUND AND FIXED ISSUES BEYOND JUST THE RE-BUILD OF THE HOUSE (REFRIGERATOR WAS MISSING AN OUTLET, AIR CONDITIONING COMPRESSOR ISSUE, SEE THE SERVICE DOCUMENTATION), THE WATER TANK HAD NOT BEEN FILLED FOR THIS WALKTHROUGH SO I WAS NOT ABLE TO CONFIRM THAT WAS ACTUALLY CORRECTED SO HAD TO TAKE WORD FOR IT. ALL NEW SUB-FLOORING AND LINOLEUM HAD TO BE PUT IN.   DURING THIS WALKTHROUGH I NOTED THE SEAMS ON THE LINOLEUM AND/OR THE KITCHEN APPEARED TO BE CROOKED (GENERAL RV CLAIMED THEY NOTICED THIS AS WELL, BUT THAT THEY HAD JUST SIMPLY FOLLOWED THE TEMPLATE PROVIDED BY THOR). NOTE: WHEN THE SERVICE ADVISOR DROVE THE VAN OUT FRONT FOR ME, HE STATED THE CHECK ENGINE LIGHT CAME ON.   THEY TESTED WITH DIAGNOSTIC AND SAID IT WAS A LOW CHASSIS BATTERY WARNING. THEY CLEARED THE LIGHT.   I WAS ADVISED TO TAKE IT TO RAM IF THAT CONTINUED.

OCTOBER 21ST -   DROVE VAN BACK TO GENERAL RV THE VERY NEXT DAY BECAUSE INVERTER WASN'T WORKING.   GENERAL RV LOCATED AND FIXED THE INVERTER ISSUE (WHICH WAS A RESULT OF THEIR WORK).

NOVEMBER 16TH -   I WENT TO THE VAN (STORED IN A CLIMATE-CONTROLLED GARAGE SINCE PICKING IT BACK UP FROM GENERAL RV) TO PREP IT FOR A PLANNED TRIP TO FLORIDA. FOUND THE CHASSIS BATTERY COMPLETELY DEAD, COULDN'T GET THE

**EMERGENCY START TO JUMP THE CHASSIS BATTERY, CALLED COACHNET TO GUIDE ME THROUGH IT AND STILL COUDN'T GET IT GOING.  COACHNET CALLED A LOCAL MECHANIC OUT TO THE VAN AND HE TOO WAS HAVING TROUBLE GETTING A CHARGE TO THE CHASSIS BATTERY.  AFTER ABOUT AN HOUR, GOT THE VAN GOING AGAIN, BUT RADIO/BACKUP CAMERA WERE DEAD AND BMPRO WASN'T WORKING PROPERLY.  CANCELLED TRIP TO FLORIDA DUE TO UNKNOWN BATTERY DRAIN ISSUE, VAN NOT USABLE. ALSO LEARNED OF A SAFETY RECALL ON THE LP HOSE FOR MY UNIT DURING THIS TIME.**

**NOVEMBER 22ND -- DROVE TO PROGRESSIVE CHRYSLER IN MASILLON, OHIO TO LOOK AT CHASSIS BATTERY AND RADIO. THEIR DIAGNOSTIC SHOWED A RADIO ISSUE AND THEY REFERRED ME BACK TO GENERAL RV FOR THAT FIX SINCE RADIO IS CONSIDERED AFTERMARKET.   THEY REPEATEDLY TOLD ME IF THEY FOUND ANYTHING WIRING-RELATED DUE TO CONVERSION, THEIR WORK WOULD NOT BE COVERED UNDER WARRANTY WITH RAM. I CHOSE TO JUST TAKE IT TO GENERAL RV FROM THERE FOR FURTHER REVIEW. DROVE DIRECTLY TO GENERAL RV IN NORTH CANTON, OH FROM PROGRESSIVE, BUT NO ONE WAS ABLE TO ASSIST.  CALLED AND GOT AN APPOINTMENT FOR DECEMBER 8TH.**

**DECEMBER 8TH -- DROVE TO GENERAL RV IN NORTH CANTON FOR RADIO/BACKUP CAMERA PROBLEM AND LOOK FOR WHAT ISSUES MAY BE DRAINING THE CHASSIS BATTERY (AS IT HAD ALSO DONE WHILE IT WAS IN SERVICE WITH THEM).  ALSO ASKED TO FIX THE DRIVER'S SEAT WHICH I HAD DISCOVERED WAS LOOSE, AND CONDUCT THE SAFETY RECALL RECEIVED REGARDING THE LP HOSE.**

**DECEMBER 14 -- DROVE TO GENERAL RV IN NORTH CANTON.  THEY WERE ABLE TO FIX THE RADIO,BUT COULDN'T GET THE SEAT FULLY REPAIRED. THEY HAD TO ORDER THE LP HOSE AND THE PART TO FULLY REPAIR THE CHASSIS BATTERY DRAIN ISSUE.**

-7-

JANUARY 19 -- EARLIEST DATE TO GET INTO GENERAL RV FOR LP AND BMI REPLACEMENT AFTER PARTS HAD COME IN, BUT I DEFERRED TO GET A COMPLETE RE-DO AT THOR INDIANA

JANUARY 24 - DROVE TO THOR INDIANA TO RE-DO WORK DONE BY GENERAL RV AND FIX ALL OTHER OUTSTANDING ISSUES
- LOOSE DRIVER'S SEAT
- REPLACE BMPRO (WHICH WAS NOT WORKING RIGHT)
- REFRIGERATOR AND DRAWERS NOT CLOSING PROPERLY DUE TO THE GENERAL RV REBUILD NOT BEING DONE RIGHT
- REPLACE THE LP HOSE DUE TO SAFETY RECALL
- REPLACE THE BATTERY CONNECTION
- PROVIDE BUG SCREEN THAT FIT
- REPLACE TABLE WITH BRAND NEW ONE

FEBRUARY 24 - DROVE TO THOR INDIANA TO PICK UP VAN.  THOR DISCOVERED OTHER ISSUES DURING THEIR TOTAL-VAN REVIEW, SUCH AS A SHOWER PAN LEAK, INAPPROPRIATE WATER DRAINING UNDER VAN, AWNING BATTERY DRAINING INEXPLICABLY QUICKLY. THE WATER DRAINS UNDER THE VAN WERE BAD ENOUGH THE THOR REP (SHAWN) SAID HE EVEN WENT TO THE FACTORY FLOOR TO BE SURE THEY WEREN'T (STILL) MAKING THEM THAT WAY.  THEY ALSO RESEALED THE ROOF – ALTHOUGH THEY CLAIMED THEY DID NOT "NEED" TO.  DURING MY WALKTHROUGH OF THE WORK THEY HAD DONE, I DISCOVERED THE GENERAL RV CARPENTRY WORK THEY HAD TO REDO WASN'T COMPLETELY FINISHED SO HAD TO DIRECT THOR TO COMPLETE CAULKING AND FINISHING BEFORE I WOULD TAKE DELIVERY. MOST IMPORTANTLY, THE GENERATOR TRIPPED DURING MY WALKTHROUGH WHICH THEY CLAIMED WAS DUE TO A POWER SURGE, FOR WHICH NO ONE HAD A CLEAR ANSWER.   I WAS SHOWN HOW TO CORRECT FOR A TRIPPED GENERATOR IN THE FUTURE, BUT IT WAS A CHALLENGE EVEN FOR THE TECHNICIAN TO GET TO IT USING A WHEELED MECHANIC'S "CREEPER" ON A CONCRETE FLOOR IN A GARAGE (LET ALONE ME OUT IN THE WILDERNESS SOMEWHERE!)

**THIS HAS LEFT ME WITH CONTINUED CONCERN ABOUT THIS PARTICULAR UNIT, WHICH HAS BEEN RIDDLED WITH MAJOR DEFECTS AND ISSUES SINCE BEFORE DATE OF PURCHASE.  I'VE ALSO SINCE LEARNED THE DOMETIC COOKTOP MAY HAVE A SAFETY ISSUE ASSOCIATED WITH IT. I HAVEN'T CHECKED MY SERIAL NUMBER TO CONFIRM YET.**

**TOTAL OUT-OF-SERVICE DAYS - ALL OF THEM"**

15.     Since purchase, Plaintiff has returned her SCOPE to the Defendant and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendant were given the opportunity to repair the SCOPE the more significant and dangerous conditions were not repaired.  Defendant failed to repair the SCOPE so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the SCOPE continues to this day to exhibit some or all of the non-conformities described herein.

16.     The defects experienced by Plaintiff with the SCOPE substantially impaired its use, value and safety.

17.      Plaintiff directly notified the Defendant of the defective conditions of the SCOPE. Plaintiff notified the Defendant that they wanted a rescission of the sale of SCOPE but the Defendant has failed and refused to buy back Plaintiff' defective SCOPE.

**VI.     Causes of Action**

**COUNT 1:     OHIO LEMON LAW**

21.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

22.     Section 1345.71 through Section 1345.77 of the Ohio Consumer Sales Practices Act is commonly known as, and will hereinafter be referred to as, the "Ohio Lemon Law."

-9-

23.     Plaintiff is a "Consumer" as defined by R.C. § 1345.71(A).

24.     Defendant is a "Manufacturer" as defined by R.C. § 1345(B).

25.     Defendant provided an "Express Warranty" and a "Warranty" as defined by R.C. §1345.71 ©.

26.     Plaintiff purchased the vehicle from Defendant through its authorized dealer.

27.     Plaintiff had the vehicle serviced at Defendant's "Authorized dealers and at Defendant's factory.

28.     Defendant, through its authorized dealer(s), has been unable, unwilling and/or has refused to conform the motor vehicle to the express warranty by repairing one or more nonconformities within a reasonable number of attempts or a reasonable amount of time.

29.     Plaintiff's SCOPE satisfies one or more of the presumptions set forth in Section 1345.73, and it has been out of service by reason of repair for approximately 6 months within the first year of ownership.

30.     As a result, Defendant is liable to Plaintiff and Plaintiff is entitled to rescind the transaction and, at their option, either a replacement vehicle of comparable value that is acceptable to Plaintiff or a full refund.

31.     In either event, Plaintiff is also entitled to recover all costs incurred, including reasonable attorney fees and all court costs, pursuant to Sections 1345.72(B) and 1345.72(A) respectively, Ohio Revised Code.

**COUNT 2:    OHIO CONSUMER SALES PRACTICES ACT**

32.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

-10-

33.     Plaintiff hereby re-alleges all statements and allegations previously set forth as if fully rewritten herein.

34.     Section 1345.01 et seq. is commonly known as, and will hereinafter be referred to as, the "Ohio Consumer Sales Practices Act" or "CSPA."

35.     Plaintiff is a "Person," as defined by R.C. § 1345.01(B).

36.     Defendant is a "Supplier" and "Person" as defined by R.C. § 1345.01 (C) & (B).

37.     Plaintiff's purchase of the SCOPE is a "Consumer Transaction" as defined by R.C. §1345.01 (A).

38.     In connection with said transaction, Defendant committed unfair, deceptive and/or unconscionable acts and practices in violation of R.C. § 1345.02 and R.C. § 1345.03.

39.     Defendant committed an unfair and deceptive act or practice by the representation that the vehicle contained a valid warranty, which would cause effective warranty repairs to be made within a reasonable time and within the warranty period, as this proved to be untrue.

40.     Defendant committed unfair and deceptive acts and practices by the representation that the vehicle would have the natural benefits of being fit for its intended and ordinary purposes and was of merchantable quality in the industry, as this was untrue.

41.     Defendant committed unfair and deceptive acts and practice in the representation that the vehicle was fit for ordinary purpose, as this was untrue.

42.     Defendant's violation of the Ohio Lemon Law constitutes an unfair, deceptive and/or unconscionable sales practice.

43.     In connection with said transaction, Defendant also committed acts and practices that have been declared to be unfair, deceptive or unconscionable by rules adopted pursuant to R.C. §

-11-

1345.05(B)(2), of the Ohio Attorney General and said acts and practices were committed after such rules were made available for public inspection pursuant to R.C. §1345.05(A)(3).

44.     Defendant never disclosed any defects in connection with the sale of the vehicle, as required by O.A.C. 109:4-13-16 (B) (14). The defects existed immediately upon the sale of this unit.

45.     Defendant, who had a legal obligation to Plaintiff under the written warranty, knowingly breached, avoided and/or attempted to avoid its obligations to the Plaintiff, which has been declared a violation of the *CSPA in Brown v. Spears*, No. 8897 (Muni, Franklin 1979); *Brown v. Lyons*, 322 N.E.2d 380 (CP, Hamilton 1974) and related cases.

46.     Defendant knowingly exhibited a pattern of inefficiency, stalling and/or incompetency with regard to its warranty repair work, which is behavior declared a violation in *Brown v. Lyons*, 332 N.E.2d 380 (CP Hamilton 1974); *Pearson v. Tom Harrigan Oldsmobile-Nissan, Inc*., No 12411, 1991 WL 214228 (2d Dist. Ct. App., Montgomery, 1991); and *Brown v. Spears*, No. 8897 (Muni, Franklin 1979).

47.     Defendant knowingly failed to honor its implied warranty of merchantability, which was declared a violation of the *CSPA in Brown v. Lyons*, 322 N.E.2d 380 (CP, Hamilton 1974).

48.     Defendant knowingly refused to accept Plaintiff's revocation of acceptance of goods, which was declared to be a violation in *Holsinger v. Krystal Klear Sales & Service, Inc*. No. 91-CV-55 (CP, Meigs 1991) and *Price v. Humphries Auto City, Inc.*, No. 7-89-CVE-243 (Muni, New Philadelphia 1990).

49.     Defendant knowingly committed all of the above unfair, deceptive, and/or unconscionable acts and practices, and plaintiff has suffered and continues to suffer actual, incidental and consequential damages as a direct and proximate result of Defendant's unfair, deceptive and

unconscionable acts and practices

**COUNT 3:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

50.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

51.    Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

52.    Defendant, SCOPE, is a  "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

53.    The SCOPE is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

54.    The express warranties more fully described hereinabove pertaining to the SCOPE is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

55.    The actions of Defendant in failing to tender the SCOPE to Plaintiff free of defects and refusing to repair or replace the SCOPE tendered to Plaintiff constitute a breach of the written and implied warranties covering the SCOPE and hence a violation of the Magnuson-Moss Warranty Act.

56.    Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

57.    As a direct and proximate result of the acts and omissions of Defendant and each of them as set forth hereinabove, Plaintiff has been damaged hereinabove in an amount in excess of

$300,000.00 according to proof at trial.

58.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### COUNT 4:     BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT

59.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendant issued an expressed written warranty which covered SCOPE, and warranted that the T

60.     The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff's SCOPE was free of defects in materials and work quality at the time of delivery.

61.     As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiff a SCOPE that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

62.     In breach of the foregoing warranties, the Defendant has failed to correct said defects.

63.     The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the SCOPE; costs of

-14-

repairs; expenses associated with returning the SCOPE for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 5:    BREACH OF IMPLIED WARRANTIES

64.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

65.     The Defendant impliedly warranted that Plaintiff' SCOPE which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

66.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the SCOPE had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiff.

67.     Because of the defects, Plaintiff's SCOPE is unsafe and unfit for use and has caused economic loss to the Plaintiff.   Therefore, the Defendant breached the implied warranty of merchantability.

68.     The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the SCOPE; costs of repairs; expenses associated with returning the SCOPE for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII.    Economic and Actual Damages

69.     Plaintiff sustained the following economic and actual damages as a result of the

-15-

actions and/or omissions of Defendant described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the SCOPE;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

## VIII. Attorney Fees and Costs

70. Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX. Prayer

71. For these reasons, Plaintiff prays for judgment against the Defendant for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the 2022 THOR SCOPE bearing VIN: 3C6LRVBG1ME515166 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c. For incidental and consequential damages according to proof at trial;

    d. Out of pocket damages for expenditures related to any cost of repairs,

-16-

deductibles; and towing charges.

e.       Any diminution in value of the SCOPE attributable to the defects;

f.       Past and future economic losses;

g.       Prejudgment and post-judgment interest;

h.       Damages for loss of use of SCOPE;

i.       Civil Penalties and/or Punitive damages;

j.       Damages for mental anguish;

k.       Attorney fees;

l.       Costs of suit, expert fees and litigation expenses; and

m       All other relief this Honorable Court deems appropriate.

**X.    Demand for Jury Trial**

72.    Plaintiff hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF

-17-